UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG SIMMONS and CASSANDRA SIMMONS, as individuals,<br><br>   Plaintiffs,<br><br>v.<br><br>COUNTRYWIDE HOME LOANS, INC., a corporation, an unknown entity, and DOES 1 through 20, inclusive,<br><br>   Defendants. | Civil No. 09cv1245 JAH(JMA)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** [DOC. # 17] **AND DENYING DEFENDANT'S MOTION TO STRIKE** [DOC. # 18] |

## INTRODUCTION

Now before the Court are the motions to dismiss and to strike filed by defendant Countrywide Home Loans, Inc. ("defendant" or "Countrywide"). The motions have been fully briefed by the parties. After a careful consideration of the pleadings and relevant exhibits submitted, and for the reasons set forth below, this Court **GRANTS IN PART** and **DENIES IN PART** defendant's motion to dismiss and **DENIES** defendant's motion to strike.

## BACKGROUND

Plaintiffs Craig Simmons and Cassandra Simmons ("plaintiffs") filed their initial complaint before the San Diego County Superior Court on April 24, 2009. The complaint was subsequently removed to this Court on June 8, 2009. On June 15, 2009, defendant filed a motion to dismiss plaintiffs' initial complaint which was subsequently denied as

moot after plaintiffs filed their first amended complaint ("FAC") on July 17, 2009. *See* Docs. # 12, 15. Plaintiffs' FAC is the operative pleading here.

Plaintiffs allege in their FAC that they purchased their home by taking out a secured loan and executing a deed of trust in May of 2006. FAC ¶¶ 12, 14. Plaintiffs further allege that on a date unknown, Countrywide began acting as an agent for the beneficiary of the loan and became the servicer of the loan. FAC ¶ 17. On April 17, 2009, Countrywide and Fannie Mae entered into a Servicer Participation Agreement ("Agreement") for the Home Affordable Modification Program ("HAMP"), a government program established pursuant to the Emergency Economic Stabilization Act of 2008,[1] that is designed to promote loan modification and other foreclosure prevention services. *See* FAC, Exhs. 1. Servicers obligations are set forth in the Agreement as well as in the Guidelines established by the Department of the Treasury. *See* FAC, Exhs. 1-3.

Plaintiffs allege that when they attempted to secure a modification of their loan, Countrywide would not provide them with a modification. FAC ¶ 20. Plaintiffs also allege that, after they apparently stopped making payments, Countrywide began harassing them in an attempt to collect payments on the loan. FAC ¶ 21. Plaintiffs assert five claims for relief: (1) breach of written contract; (2) declaratory relief; (3) violation of California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code §1788, *et seq.*; (4) invasion of privacy; and (5) unfair business practices in violation of Cal. Bus. & Prof. Code § 17200.

Defendant filed the instant motions on August 3, 2009. Plaintiffs filed an opposition on September 17, 2009 and defendant filed a reply brief on September 22, 2009.[2] This Court subsequently took defendant's motions under submission without oral

---

[1] On March 4, 2009, President Obama signed into law the Making Home Affordable Plan as part of the Emergency Economic Stabilization Act of 2008, which consists of two parts: the Home Affordable Refinance Program and the HAMP.

[2] In its reply brief, defendant urges the Court to disregard plaintiffs' opposition to defendant's motion to dismiss because it was untimely filed, thus rendering the motions unopposed. *See* Doc. # 21 at 1. Defendant points out that plaintiffs' opposition, due by September 14, 2009, was filed three days late. Id. Although defendant is correct that plaintiffs' opposition is untimely, defendant was apparently not

argument. *See* Doc. # 23; CivLR 7.1(d.1).

## DISCUSSION

Defendant moves to dismiss each claim for relief asserted in plaintiffs' FAC for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In addition, defendant moves to strike certain portions of plaintiffs' FAC pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

**1.     Legal Standards**

   **a.     Motion to Dismiss**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984); *see* Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. Robertson, 749 F.2d at 534.  While a plaintiff need not give "detailed factual allegations," he must plead sufficient facts that, if true, "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 547).  A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible

---

prejudiced by the delay, in that its reply brief was timely filed. Therefore, plaintiffs' opposition will not be disregarded.

claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950.

### b. Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure grants a party the right to strike any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Immaterial" refers to a matter that has no bearing on the controversy before the court. Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993)(reversed on other grounds in Fogerty v. Fantasy, Inc., 510 U.S. 517, 534-535). "Impertinent" matters include allegations that are not responsive or relevant to the issues involved in the action. Id.

## 2. Analysis

### a. Motion to Dismiss

#### 1. Breach of Contract [First Claim for Relief]

Plaintiffs seek relief based on their alleged status as third-party beneficiaries to the Agreement between Countrywide and Fannie Mae. *See* FAC ¶ 39. Countrywide contends that plaintiffs lack standing to sue because they are not intended third party beneficiaries to the Agreement. This Court agrees with Countrywide.

Federal law governs the Agreement and thus the Agreement must be construed under federal law. *See* FAC, Exh. 1 § 11A. In applying federal law regarding third-party beneficiaries, the Ninth Circuit is guided by the Restatement of Contracts. *See* Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210-11 (9th Cir. 2000). The Restatement on Contracts explains that:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . .
> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts § 302 (1979) ("Restatement").

"To sue as a third-party beneficiary of a contract, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party." Klamath, 204 F.3d at 1211. "One way to ascertain such intent is to ask whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him or her." Id. (citing Restatement § 302(1)(b), comment d.). In Klamath, the Ninth Circuit cautioned that parties benefitting "from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary." Klamath, 204 F.3d at 1211 (citing Restatement § 313(2) ("Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested.")).

More recently, in County of Santa Clara v. Astra USA, Inc., 588 F.3d 1237 (9th Cir. 2009), the Ninth Circuit explained that "[d]emonstrating third-party beneficiary status in the context of a government contract is a comparatively difficult task" requiring examination of the "'precise language of the contract for a 'clear intent' to rebut the presumption that the [third parties] are merely incidental beneficiaries.'" Id. at 1244 (quoting Orff v. United States, 358 F.3d 1137, 1147 n.5 (9th Cir. 2004)). The Ninth Circuit went on to determine, however, that the central question in this task is whether the parties to the contract "intended to grant covered entities enforceable rights as intended beneficiaries of that agreement" by looking at the "text and purpose" of the contract as well as the governing statute and its purpose when the contract is mandated by federal statute. Id. at 1245-46.

Here, the Agreement provides that:

1. Services.

A. Subject to the terms of Section 10.C., Servicer (defendant) shall perform the loan modification and other foreclosure preventive services ... described in (i) the Financial Instrument ...; and (iii) any supplemental documentation, instructions, bulletins, letters, directives or other communications, including ... compliance requirements, performance requirements and related remedies, issued by the Treasury ... in order to further ... describe or clarify the scope of the rights and duties of the Participating Servicers in connection with the Program ... and together with

the Program Guidelines ...

FAC, Exh. 1 at 2. The Agreement further provides that:

> B. Servicer's representations and warranties, and acknowledgment of and agreement to fulfill and satisfy certain duties and obligations with respect to its participation in the Program and under the Agreement are set forth in the Financial Instrument.

Id. The Financial Instrument, attached as Exhibit A to the Agreement, contains the following provisions: (1) "Servicer shall perform all services in consideration of the Purchase Price in accordance with the terms and conditions of the Agreement, the reasonable satisfaction of Fannie Mae or Freddie Mac;" (2) "Servicer shall use all reasonable efforts to remove all ... impediments ... in order to effectuate any loan modification under the Program;" (3) "Servicer covenants that ... all mortgage modifications and all trial period modifications will be offered to borrowers, fully documented and serviced in accordance with the Program Documentation;" and (4) "Servicer covenants that it will ... perform the Services required under the Program Documentation and the Agreement." Id.

The HAMP Guidelines dated March 4, 2009,[3] attached to the FAC as Exhibit 2, identify eligibility requirements for loan modifications, including qualification terms and underwriting analysis, which provide that servicers are "required to consider all eligible loans unless prohibited by the rules of the applicable pooling and servicing agreement and/or other investor servicing agreements ... [and] use all reasonable efforts to remove any prohibitions and obtain waivers or approvals from all necessary parties." FAC, Exh. 2 at 2. The Guidelines further state that "[a]ny foreclosure action will be temporarily suspended during the trial period, or while the borrowers are considered for alternative foreclosure prevention options." Id. at 3.

A Summary of Guidelines issued by the United States Treasury, attached to the Agreement as Exhibit 3, indicates that the Making Home Affordable Plan is designed to

---

[3] This Court notes that the Agreement was executed on April 14, 2009. This Court infers that the Guidelines, dated March 4, 2009, were incorporated into the Agreement at the time of its execution pursuant to Paragraph 1.A.

"help[] prevent the destructive impact of foreclosures on families, communities and the national economy." FAC, Exh. 3. These Guidelines provide that the Home Affordable Refinance Program will be available to 4 to 5 million homeowners who have a solid payment history on an existing mortgage and the HAMP will help 3 to 4 million at risk homeowners avoid foreclosures. Id.

In addition, the recitals that precede Paragraph 1 of the Agreement, incorporated by reference in Paragraph 1.c., reflect that HAMP was established by the United States Treasury and "includes loan modification and other foreclosure prevention services," stating specifically that Participating Servicers "must agree to certain terms and conditions relating to the respective roles and responsibilities of Program participants." FAC, Exh. 1 at 1. The recitals further state that defendant "wishes to participate in the program as a Participating Servicer on the terms and conditions set forth [in the Agreement]." Id.

This Court finds the facts in Klamath analogous to the facts here. The Klamath case involved a 50 year contract originally entered into in 1917 (and later extended for an additional 50 years) pursuant to the Reclamation Act and "acts of Congress relating to the preservation and development of fish and wildlife resources," between the United States Bureau of Reclamation (the "United States") and the California Oregon Power Company ("Copco"), the only named parties to the contract. Id. The contract provided that Copco construct a dam and then reconvey it to the government. Id. at 1209. The contract also gave Copco the right to operate the dam. Id. The dam was built to satisfy a number of federal purposes and obligations, such as impounding water to flood adjacent wildlife refuges, to comply with the Endangered Species Act and other federal requirements related thereto, and in recognition of fishing and water treaty rights between the Secretary of the Interior and a number of Oregon Tribes. Id. The Klamath Water Users Protective Association and other irrigators in the Klamath Basin (collectively the "Irrigators") sued for breach of contract based on allegations that they have standing to sue on the contract as third party beneficiaries to the contract between the United States and Copco. Id. at 1210. The Ninth Circuit held that, although a contract between the United States and

a dam operator operated to the Irrigators' benefit and was "undoubtedly entered into with the Irrigators in mind," there was nothing in the contract demonstrating an intention of the parties to the contract to grant the Irrigators enforceable rights. Id. at 1211-12. The Ninth Circuit explained that "to allow them intended third-party beneficiary status would open the door to all users receiving a benefit from the Project achieving similar status, a result not intended by the Contract." Id. at 1212.

Similarly, here, the Agreement here was entered into in part for the benefit of qualified borrowers and with those borrowers in mind but the language of the contract does not demonstrate a clear intent by the parties to grant qualified borrowers the right to enforce the Agreement. In fact, the Agreement specifies that it "shall inure to the benefit of . . . the parties to the Agreement and their permitted successors-in-interest." FAC, Exh. 1 § 11.E. Plaintiffs fail to point to any language in the Agreement indicating the parties clearly intended to benefit qualified borrowers by entering into the Agreement. This Court's independent review has found no language in the Agreement which would rebut the presumption that qualified borrowers are merely incidental beneficiaries to the Agreement.

Qualified borrowers such as plaintiffs here cannot reasonably rely on a manifested intent to confer rights upon them since the Agreement does not require that Countrywide modify all eligible loans. *See* Escobedo v. Countrywide Home Loans, Inc. 2009 WL 4981618 *3 (S.D.Cal. Dec. 19, 2009); *see also* Burtzos v. Countrywide Home Loans, 2009 WL 2196068 * 2 (S.D.Cal. June 1, 2010). Instead, the Agreement here sets forth HAMP guidelines based on certain eligibility requirements, stating that: "[p]articipating servicers are required to consider all eligible loans under the program guidelines unless prohibited by the rules of the applicable PSA and/or other investor servicing agreements." FAC, Exh. 2 at 2. The Agreement does not state that Countrywide must modify all mortgages that meet the eligibility requirements only that it is required to consider them. Thus, this Court finds that qualified borrowers such as plaintiffs are only incidental beneficiaries of the Agreement and do not have enforceable rights under the contract. Therefore, plaintiffs

lack standing to sue for an alleged breach of the Agreement[4] and defendant's motion to dismiss is **GRANTED** as to this claim.

### 2. Declaratory Relief [Second Claim for Relief]

Defendant contends that plaintiffs' declaratory relief claim is duplicative of their breach of contract claim.  In opposition, plaintiffs agree to forgo this claim in favor of their breach of contract claim. Therefore, this Court **GRANTS** defendant's motion to dismiss this claim.

### 3. RFDCPA [Third Claim for Relief]

Defendant contends that plaintiffs' RFDCPA claim should be dismissed because plaintiffs have failed to allege sufficient facts to support such a claim.  This Court disagrees with defendant.  Although plaintiffs' FAC is not very detailed, it sufficiently alleges harassing conduct that would violate California Civil Code §1788.11(d), (e) and § 1788.17 (by violating 15 U.S.C. § 1692b(2), (6)). Plaintiffs allege that Countrywide representatives continuously made telephone calls to plaintiffs and allege that although Countrywide was provided with the name and phone number of plaintiffs' attorney, Countrywide representatives continued to contact and harass plaintiffs.  FAC ¶¶ 21-23.  In addition, plaintiffs allege that Countrywide failed to provide the notice required by Cal. Civ. Code § 1812.700. FAC ¶ 49(d).  There is little else that can be pled with respect to a failure to give notice.  This Court finds that plaintiffs have alleged sufficient facts to support a claim under the RFDCPA. Therefore, defendant's motion to dismiss is **DENIED** as to this claim.

### 4. Invasion of Privacy [Fourth Claim for Relief]

Defendant seeks to dismiss plaintiffs' invasion of privacy claim on the ground that plaintiff has not alleged facts establishing (1) a sufficiently serious invasion of his privacy interest; and (2) damages.  The essential elements of a claim for invasion of privacy are:

---

[4] Although HAMP was enacted by Congress with the intent to aid distressed homeowners in this volatile economic climate, *see* FAC, Exh. 3 at 2, it appears to this Court that the statute does not provide homeowners with the right to enforce agreements made pursuant to it. Unfortunately, the remedy for this conundrum is with Congress, not this Court.

(1) the defendant intentionally intruded upon the solitude or seclusion, private affairs or concerns of the plaintiff; (2) the intrusion was substantial, and of a kind that would be highly offensive to an ordinarily reasonable person; and (3) the intrusion caused plaintiff to sustain injury, damage, loss or harm. Cal. BAJI 7.20.

Repeated phone calls may rise to the level of an intrusion of privacy that supports a cause of action. *See* Joseph v. J.J. MacIntyre Companies, LLC., 238 F. Supp. 2d 1158, 1169 (N. D. Cal. Dec. 12, 2002) (holding that given the number and pattern of telephone calls alleged, there was a genuine issue of fact as to whether the plaintiff's privacy was invaded). As discussed above, plaintiffs have alleged facts regarding repeated and continuous calls. These facts support a plausible claim of a substantial invasion of privacy that would be offensive to a reasonable person.

As for damages, plaintiffs allege that as a result of the invasions of privacy, they "were harmed and caused great mental and physical pain." FAC ¶ 58. This Court finds this allegation sufficient to satisfy the element of damages. *See* Miller v. National Broadcasting Co., 187 Cal. App. 3d 1463, 1484-85 (1986) (explaining that where there is a wrongful invasion of privacy, damages may be recovered for mental anguish alone). Accordingly, defendant's motion to dismiss is **DENIED** as to plaintiffs' invasion of privacy claim.

### 5. Cal. Bus. & Prof. Code § 17200 [Fifth Claim for Relief]

Defendant further contends that plaintiffs' § 17200 claim fails because it is premised on plaintiffs' other claims, which fail to state a claim. However, because plaintiffs' RFDCPA and invasion of privacy claims withstand the instant motion to dismiss, this Court finds defendant's argument unavailing. Therefore, defendant's motion to dismiss this claim is **DENIED.**

### b. Motion to Strike

Defendant also moves to strike plaintiffs' prayer for punitive damages and punitive damage allegations on the ground that plaintiffs have failed to plead facts establishing that defendant's acts were oppressive, fraudulent, or malicious and have failed to plead facts

establishing that defendant, as a corporate employer, is liable for any acts of oppression, fraud or malice. However, under federal pleading requirements, malice and intent may be averred generally. <u>Clark v. Allstate Ins. Co.</u>, 106 F. Supp. 2d 1016, 1020 (S. D. Cal. 2000). "[T]he fact that California courts may impose a heightened pleading requirement on claims for punitive damages is irrelevant, because such a requirement conflicts with federal procedural law." <u>Robinson v. Managed Accounts Receivable Corp.</u>, 654 F. Supp. 2d 1051, 1066 (C.D. Cal. 2009). Conclusory assertions of intentional and malicious misconduct are sufficient to support a claim for punitive damages. <u>Clark</u>, 106 F.Supp.2d at 1020. Plaintiffs allege that defendant "willfully and intentionally intruded into [p]laintiffs' solitude, seclusion and private affairs by repeatedly and unlawfully attempting to collect a debt" and that defendants "acted with oppression or malice." FAC ¶¶ 55, 58. These allegations are sufficient under federal pleading standards. Therefore, defendant's motion to strike is **DENIED**.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendant's motion to dismiss [doc. # 17] is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. Defendant's motion is **GRANTED** as to plaintiffs' first claim for breach of contract and second claim for declaratory relief;

    b. Defendant's motion is **DENIED** as to plaintiffs' third, fourth, and fifth claims for relief; and

2. Defendant's motion to strike plaintiffs' punitive damages allegations [doc. # 18] is **DENIED**.

DATED: June 28, 2010

JOHN A. HOUSTON
United States District Judge